UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAQUAN P. JAMES,
   an individual,
        Plaintiff,

Case No.
Hon.

V

CITY OF DETROIT
a municipal corporation,

**COMPLAINT AND JURY DEMAND**

BRITTANY MOSS,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

MARKALA MOORE,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

DEANDRA WILLIAMS,
City of Detroit Police Officer,
Individually, and in his Official
Capacities, and

DAMARIO ELLIOTT-GLENN,
City of Detroit Police Officer,
Individually, and in his Official
Capacities.

        Defendants.

Plaintiff, DAQUAN P. JAMES, alleges the following in his Complaint:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, §1343, and §1367.

3. Venue is proper under 28 U.S.C. §1391 (b), as the events giving rise to the claims asserted in this complaint occurred within this district.

## PARTIES

4. Plaintiff, DAQUAN P. JAMES (hereinafter "PLAINTIFF"), is a resident of the County of Wayne, State of Michigan.

5. Defendant, City of Detroit (hereinafter "hereinafter DEFENDANT DETROIT"), is a municipal corporation located in the County of Wayne, State of Michigan.

6. Defendant, BRITTANY MOSS (hereinafter "DEFENDANT MOSS"), was at all relevant times a City of Detroit Police Officer and/or employed by DEFENDANT DETROIT, and acting under color of law and within the scope of her employment.

7. Defendant, MARKALA MOORE (hereinafter "DEFENDANT MOORE"), was at all relevant times a City of Detroit Police Officer and/or employed by DEFENDANT DETROIT, and acting under color of law and within the scope of her employment.

8. Defendant, DEANDRA WILLIAMS (hereinafter "DEFENDANT WILLIAMS"), was at all relevant times a City of Detroit Police Officer and/or employed by DEFENDANT DETROIT, and acting under color of law and within the scope of his employment.

9. Defendant, DAMARIO ELLIOTT-GLENN (hereinafter "DEFENDANT GLENN"), was at all relevant times a City of Detroit Police Officer and/or employed by DEFENDANT DETROIT, and acting under color of law and within the scope of his employment.

10. DEFENDANT DETROIT is liable under state and/or federal law for all injuries proximately caused by:
    i. Intentional, willful and wanton, reckless, deliberately indifferent, grossly negligent and/or negligent acts and/or omissions committed pursuant to customs, policies, usage and/or practices which deprive citizens of their rights, privileges, and/or immunities secured by the Constitutions and laws of the United States and/or of the State of Michigan.

## FACTS

11. PLAINTIFF is the owner of Farm Boys Novelty Shop located at 18523 Schoolcraft Detroit, MI 48223 (hereinafter "Property").

12. At Property, PLAINTIFF sells novelty items.

13. PLAINTIFF attempted to obtain a license from the City of Detroit to sell certain items at Property.

14. According to City of Detroit Ordinance 5-12-4, individuals with the Sexually Oriented Business license shall allow members of the Detroit Police Department or employees/agents of the City of Detroit to inspect during normal business hours.

15. Furthermore, this ordinance only allowed the search of the public area of the properties.

16. PLAINTIFF had not yet obtained these licenses, so he was not subject to the ordinance; therefore, a search warrant was required for the police to enter Property.

17. Upon information and belief, DEFENDANTS believed PLAINTIFF was required to allow them to search Property under the ordinance.

18. On March 21, 2022, DEFENDANT MOORE and DEFENDANT MOSS **two female officers** came into Property in an undercover capacity.

19. PLAINTIFF was not aware that DEFENDANT MOORE and DEFENDANT MOSS were police officers at the time they entered Property.

20. DEFENDANT MOORE and DEFENDANT MOSS acted as if they were going to purchase hookah products from Property.

21. PLAINTIFF was assisting DEFENDANT MOORE and DEFENDANT MOSS with questions regarding the hookah products.

22. PLAINTIFF then received a telephone call from Sergeant Allen Williams (hereinafter "Sergeant"), which distracted PLAINTIFF from assisting DEFENDANT MOORE and DEFENDANT MOSS.

23. PLAINTIFF was confused by the telephone call from Sergeant because he was angry and using profanity when speaking to PLAINTIFF.

24. Sergeant told PLAINTIFF that an inspection was going to be conducted at Property.

25. After PLAINTIFF ended the telephone call with Sergeant, PLAINTIFF locked the doors to Property so that no police officers could gain entry to Property to inspect without a search warrant.

26. PLAINTIFF viewed the cameras, and PLAINTIFF could see two Detroit police officers approaching the front door, DEFENDANT GLENN and OFFICER CHRISTIAN EARL (hereinafter "OFFICER EARL").

27. PLAINTIFF was not too concerned by DEFENDANT GLENN and OFFICER EARL entering the Property because the doors were locked.

28. However, DEFENDANT MOSS unlocked the door and allowed DEFENDANT GLENN and OFFICER EARL to enter Property without a search warrant.

29. PLAINTIFF still had not realized that the two female customers, DEFENDANT MOORE and DEFENDANT MOSS, were Detroit Police Officers.

30. While DEFENDANT GLENN and OFFICER EARL were inside Property, the security system sounded stating that the "back door was open."

31. DEFENDANT GLENN and OFFICER EARL immediately exited Property and ran to the back of Property.

32. PLAINTIFF locked the door again when DEFENDANT GLENN and OFFICER EARL exited Property.

33. With all of the confusion taking place and the two female customers not leaving, PLAINTIFF finally realized that the female officers, DEFENDANT MOORE and DEFENDANT MOSS, were Detroit Police Officers.

34. Despite PLAINTIFF locking the door for a second time, DEFENDANT MOORE unlocked the door to allow the officers to re-enter.

35. PLAINTIFF asked DEFENDANT MOORE and DEFENDANT MOSS to leave Property, as they did not have a search warrant.

36. DEFENDANT MOORE and DEFENDANT MOSS refused to leave and they proceeded to enter the **private area** of Property.

37. At this same time, DEFENDANT GLENN re-entered Property along with DEFENDANT WILLIAMS.

38. DEFENDANT GLENN and DEFENDANT WILLIAMS entered the **private area** of Property and began assaulting PLAINTIFF.

39. DEFENDANT GLENN and DEFENDANT WILLIAMS' report stated that, DEFENDANT WILLIAMS attempted to secure a weapon from PLAINTIFF but PLAINTIFF clapped down with his right arm.

40. PLAINTIFF denies that he ever placed his hand on his weapon and believes that DEFENDANT GLENN and DEFENDANT WILLIAMS account of the incident is bizarre because if PLAINTIFF had attempted to grab his weapon - PLAINTIFF would have been shot.

41. PLAINTIFF's account of the incident is that DEFENDANTS did not realize PLAINTIFF had a weapon on his person until after the assault ended and PLAINTIFF informed the officers that he had a weapon in his waist. PLAINTIFF's account relies on the following claims:

     i.   DEFENDANT MOORE and DEFENDANT MOSS remained in location with PLAINTIFF for over ten minutes alone and did not attempt to disarm PLAINTIFF.

     ii.   DEFENDANT GLENN and OFFICER EARL would have helped DEFENDANT MOORE and DEFENDANT MOSS disarm PLAINTIFF instead of exiting Property to investigate what was happening at the rear of the building when the alarm sounded.

     iii.   DEFENDANT MOORE and DEFENDANT MOSS would not have tried to gain access to the private area of Property without DEFENDANT GLENN and DEFENDANT WILLIAMS presence, if they were aware that PLAINTIFF was armed and agitated.

     iv.   When they re-entered, DEFENDANT GLENN and DEFENDANT WILLIAMS would not have confronted PLAINTIFF without their weapons drawn if they were aware that PLAINTIFF had a weapon.

     v.   DEFENDANT GLENN and DEFENDANT WILLIAMS would not have used physical force on PLAINTIFF if they knew he had a weapon, they would have shot PLAINTIFF.

42.   DEFENDANT GLENN's report further stated the following:

     i.   DEFENDANT WILLIAMS delivered a strike with a closed fist to the face of PLAINTIFF. (See Exhibit 1)

ii. DEFENDANT GLENN delivered strikes to the head and body of PLAINTIFF (strikes included a closed fist to the head and knee strikes to the body). (See Exhibit 1)

43. While being assaulted, PLAINTIFF continuously asked DEFENDANT GLENN and DEFENDANT WILLIAMS "to stop and why are you doing this."

44. PLAINTIFF was then handcuffed and brought to the front of the building and made to sit on the floor in a position that was painful because of his medical condition.

45. PLAINTIFF is disabled because of his medical condition.

46. In December of 2011, PLAINTIFF was pronounced dead after a gunshot wound to his abdomen; however, doctors were able to revive him.

47. The bullet was not removed from PLAINTIFF's abdomen because it was too close to a vital organ and remains in his body today; doctors warned PLAINTIFF that he should avoid any physical activities because if the bullet shifts, he could die.

48. DEFENDANTS physical assault required PLAINTIFF to be hospitalized causing the following injuries:

   i. Head Pain including migraines;

   ii. Eye Pain including blurred vision;

    iii.    Neck Pain;

    iv.    Back Pain;

    v.    Leg Pain including numbness;

    vi.    Shoulder Pain;

    vii.    Stomach Pain; and

    viii.    Chest Pains.

49. Furthermore, DEFENDANTS removed all of PLAINTIFF's personal belongings from Property including the video monitoring system.

50. PLAINTIFF was criminally charged in this matter but the case was dismissed because DEFENDANTS failed to appear in court for the Preliminary Exam.

## COUNT I:

## §1983 MUNICIPAL/SUPERVISORY LIABILITY

## (DEFENDANT DETROIT)

51. PLAINTIFF incorporates by reference the above paragraphs.

52. DEFENDANT DETROIT acted recklessly and/or with deliberate indifference when it practiced and/or permitted customs, policies, and/or practices that resulted in violations to PLAINTIFF.

53. These customs, policies, and/or practices included but were not limited to the following:

    a. Failing to supervise officers to prevent violations of citizens' constitutional rights;

    b. Failing to adequately train and/or supervise officers regarding proper use of force;

    c. Failing to adequately train and/or supervise officers regarding legal search and/or seizures;

    d. Failing to control and/or discipline officers known to harass, intimidate, and/or abuse citizens;

    e. Failing to supervise, review, and/or discipline officers whom DEFENDANT DETROIT knew or should have known were violating or were prone to violate citizens' constitutional rights, thereby permitting and/or encouraging its police officers to engage in such conduct;

    f. Failing to require compliance of its officers and/or employees with established policies and/or procedures and/or rules and discipline or reprimand officers who violate these established policies.

54. PLAINTIFF's injuries in this case were proximately caused by policies and practices of DEFENDANT DETROIT, which, by its deliberate indifference,

allows its police officers to violate the Constitutional rights of citizens without fear or any meaningful investigation or punishment. In this way, DEFENDANT DETROIT violated PLAINTIFF's rights since it created the opportunity for the individually named DEFENDANTS to commit the foregoing Constitutional violations.

55. The misconduct described in preceding paragraphs has become a widespread practice, and so well settled as to constitute de facto policy in the DEFENDANT DETROIT police department. This policy was able to exist and thrive because government policymakers have exhibited deliberate indifference to the problem, thereby ratifying it.

56. The widespread practices described in preceding paragraphs were allowed to flourish because DEFENDANT DETROIT has declined to implement sufficient hiring, training, and/or legitimate and/or effective mechanisms for oversight and/or punishment of police officers' misconduct.

57. The policies and practices of DEFENDANT DETROIT directly and proximately led to the injuries PLAINTIFF suffered at the hands of DEFENDANTS.

58. As a direct and proximate result of said Constitutional violations, PLAINTIFF suffered loss of freedom, mental anguish, pain and suffering,

loss of enjoyment of life, humiliation, degradation and emotional injuries, all past, present, and future.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANTS, in whatever amount the PLAINTIFF is found to be entitled, in excess of Seventy Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interest, attorney fees per 42 U.S.C Section 1988, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

## COUNT II:
## §1983 EXCESSIVE FORCE
**(DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN)**

59. PLAINTIFF incorporates by reference the above paragraphs.

60. As more fully described in the preceding paragraphs, the intentional conduct of DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN toward PLAINTIFF was objectively unreasonable and constituted excessive force in violation of the Fourth and Fourteenth Amendments to the United States' Constitution.

61. DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN were aware of the misconduct of one another with respect to PLAINTIFF and all officers had a reasonable opportunity to intervene to prevent the misconduct, but all officers failed to do so.

62. As a direct and proximate result of DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN use of excessive force, PLAINTIFF suffered injuries and damages including but not limited to physical injuries as well as emotional injuries, all past, present, and future; as well as loss of enjoyment of life, humiliation and degradation; as described in preceding paragraphs and which will be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN in whatever amount the PLAINTIFF is found to be entitled, in excess of Seventy Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interest, attorney fees per 42 U.S.C Section 1988, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

## COUNT III:

## §1983 UNLAWFUL SEIZURE

## (DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN)

63. PLAINTIFF incorporates by reference the above paragraphs.

64. DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN unlawfully seized PLAINTIFF and his personal property without a warrant, without probable cause, and without any other legal justification, in violation of the Fourth and Fourteenth Amendments to the United States' Constitution.

65. As a direct and proximate result of DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN's misconduct and unlawful seizure, PLAINTIFF suffered pain and injuries not limited to emotional injuries, all past, present, and future as well as loss of enjoyment of life, humiliation, and degradation as described in preceding paragraphs and which will be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN in whatever amount the PLAINTIFF is found to be entitled, in excess of

Seventy Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interest, attorney fees per 42 U.S.C Section 1988, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

## COUNT IV:

## §1983 UNLAWFUL SEARCH

## (DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN)

66. PLAINTIFF incorporates by reference the above paragraphs.

67. DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN unlawfully searched PLAINTIFF's person and Property without a warrant, without probable cause and without any other legal justification, in violation of the Fourth and Fourteenth Amendments to the United States' Constitution.

68. As a direct and proximate result of DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN's unlawful search, PLAINTIFF suffered pain and injuries not limited to emotional injuries, all past, present, and future as well as loss of enjoyment

of life, humiliation, and degradation as described in preceding paragraphs and which will be proven at trial.

WHEREFORE, PLAINTIFF prays for judgment against DEFENDANT MOSS, DEFENDANT MOORE, DEFENDANT WILLIAMS, and DEFENDANT GLENN, in whatever amount the PLAINTIFF is found to be entitled, in excess of Seventy Five Thousand ($75,000.00) Dollars, per Defendant, and to award costs, interest, attorney fees per 42 U.S.C Section 1988, as well as substantial punitive and exemplary damages, together with such other relief that this Honorable Court deems just.

Dated: February 7, 2023  /s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI 48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com

**Attorney for Plaintiff**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAQUAN P. JAMES,
    an individual,                              Case No.
        Plaintiff,                                 Hon.

V                                                   **DEMAND FOR TRIAL BY JURY**

CITY OF DETROIT
a municipal corporation,

BRITTANY MOSS,
City of Detroit Police Officer,
Individually, and in her Official Capacities, and

MARKALA MOORE,
City of Detroit Police Officer,
Individually, and in her Official Capacities, and

DEANDRA WILLIAMS,
City of Detroit Police Officer,
Individually, and in his Official Capacities, and

DAMARIO ELLIOTT-GLENN,
City of Detroit Police Officer,
Individually, and in his Official Capacities, and

        Defendants.
_____/

## DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, Daquan P. James hereby demands a trial by jury.

Dated: February 7, 2023   /s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com