# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAQUAN P. JAMES,
    an individual,
        Plaintiff,

Case No. 2:23-cv-10321
Hon. Denise Page Hood

V.

CITY OF DETROIT
a municipal corporation,

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

BRITTANY MOSS,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

MARKALA MOORE,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

DEANDRE WILLIAMS,
City of Detroit Police Officer,
Individually, and in his Official
Capacities, and

DAMARIO ELLIOTT-GLENN,
City of Detroit Police Officer,
Individually, and in his Official
Capacities.

ALLEN WILLIAMS,
City of Detroit Police Sargeant,
Individually, and in his Official
Capacities.

i

Defendants.

---

## **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff, Daquan James, by and through his attorneys the Law Offices of Ivan L. Land, P.C. and states the following for his Response to Defendants' Motion for Summary Judgment.

1.     Plaintiff admits the allegations contained in Paragraph 1.

2.     Plaintiff admits the allegations contained in Paragraph 2.

3.     Plaintiff admits the allegations contained in Paragraph 3.

4.     Plaintiff denies the allegations contained in Paragraph 4, as untrue.

5.     Plaintiff denies the allegations contained in Paragraph 5, as untrue.

6.     There is no Paragraph 6 included.

7.     Plaintiff denies the allegations contained in Paragraph 7, as untrue.

8.     Plaintiff denies the allegations contained in Paragraph 8, as untrue.

9.     Plaintiff denies the allegations contained in Paragraph 9, as untrue.

REQUESTED RELIEF Plaintiff requests this Honorable Court to deny Defendants' Motion for Summary Judgement pursuant to Fed. R. Civ. P.56 (c) for the reasons contained in this motion and the accompanying brief.

Dated: September 15, 2025                    /s/Ivan L. Land_____
                                             Ivan L. Land (P65879)

ii

Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAQUAN P. JAMES,
    an individual,
        Plaintiff,

Case No. 2:23-cv-10321
Hon. Denise Page Hood

V.

CITY OF DETROIT
a municipal corporation,

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S RESPONSE TO**
**DEFENDANTS' MOTION TO**
**DISMISS AND FOR SUMMARY**
**JUDGMENT**

BRITTANY MOSS,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

MARKALA MOORE,
City of Detroit Police Officer,
Individually, and in her Official
Capacities, and

DEANDRE WILLIAMS,
City of Detroit Police Officer,
Individually, and in his Official
Capacities, and

DAMARIO ELLIOTT-GLENN,
City of Detroit Police Officer,
Individually, and in his Official
Capacities.

ALLEN WILLIAMS,
City of Detroit Police Sargeant,
Individually, and in his Official
Capacities.

iv

Defendants.

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

*PRIMARY CONTROLLING AUTHORITY* .......................................................*vii*

*ISSUES PRESENTED*............................................................................*viii*

*I.    FACTS* ...........................................................................................*1*

*II.    LEGAL STANDARDS*.....................................................................*4*

*III.    ARGUMENT* ..................................................................................*5*

**A.   WHETHER OR NOT PLAINTIFF CAN SHOW THAT ANY SUCH RIGHTS GUARANTEED BY THE U.S. CONSTITUTION WERE VIOLATED PURSUANT TO AN UNCONSTITUTIONAL MUNICIPAL POLICY** ......................................................................................**6**

**B.   WHETHER THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED GOOD FAITH IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS UNDER 42 § U.S.C. 1983** ...........................................**10**

*IV.    CONCLUSION*.............................................................................*22*

## PRIMARY CONTROLLING AUTHORITY

**Cases**

*Baker v. City of Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006).........................15

*Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013)...........................................18

*Camara v. Mun. Ct.*, 387 U.S. 523, 534–39 (1967) ...............................................20

*Celotex Corp. v. Catrett,* 477 U.S. 317,322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ..........................................................................................................................4

*Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901–03 (6th Cir. 2004) ........15

*City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989) ...........................................6

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015)....................................15, 16, 17

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984) ...................................16, 17

Graham v. Connor, 490 U.S. 386 (1989) .......................................................11, 12, 13

*Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713 (1999) ...................20

*Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)...................................19, 20

*Lewis v. LeGrow*, 258 Mich. App. 175, 196–97, 670 N.W.2d 675 (2003) .............21

*Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978) ..............................................15, 16

*Martin v. City of Broadview Heights*, 712 F.3d 951, 962–63 (6th Cir. 2013) ........15

*Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).......................6

*Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997)................................4

*New York v. Burger*, 482 U.S. 691, 702–12 (1987) ..............................15, 16, 17, 20

*Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ....................................................10

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986) .................................6

*Revis v. Meldrum*, 489 F.3d 273, 290–91 (6th Cir. 2007).......................................19

*Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905 (1985) ...21

Saucier v. Katz, 533 U.S. 194 (2001).........................................................................9

*Scott v. Harris*, 550 U.S. 372, 380 (2007)..............................................................10

*See v. City of Seattle*, 387 U.S. 541 (1967) ..............................................8, 15, 16, 20

*Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003)......................................20

*Terry Barr Sales Agency, Inc.* v. *All-Lock Co.,* 96 F.3d, 174,178 (6th Cir. 1996)....4

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).................................................18

*Walsh v. Taylor*, 263 Mich. App. 618, 634, 689 N.W.2d 506 (2004)...............20, 21

*Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000) ............................................19

**Rules**

Local Rule 5.1(a)........................................................................................................5

Local Rule 7.1(a)........................................................................................................5

Rule 56(c)...................................................................................................................4

## ISSUES PRESENTED

I.   **WHETHER OR NOT PLAINTIFF CAN SHOW THAT ANY SUCH RIGHTS GUARANTEED BY THE U.S. CONSTITUTION WERE VIOLATED PURSUANT TO AN UNCONSTITUTIONAL MUNICIPAL POLICY**

II.  **WHETHER THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED GOOD FAITH IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS UNDER 42 § U.S.C. 1983**

## I. FACTS

On March 16, 2022, an employee of the City of Detroit Building, Safety, Engineering, and Environment Department (BSEED) attempted to conduct an inspection at 18523 Schoolcraft, Detroit, MI 48223 (Farm Boy Novelty Store). The owner of Farm Boy Novelty Store is Plaintiff in this matter (Daquan James) (See Exhibit 1, Lease Agreement). The employee refused to leave the business unless an inspection was conducted. Plaintiff was forced to call the Detroit Police to have the employee physically removed from the business. This entire incident was captured on a recording (See Exhibit 2, Recording of BSEED Employee Incident). Plaintiff told the employee that it was private property and directed him to a sign on the door.

Then on March 21, 2022, two female Detroit Police Officers, Defendant Brittany Moss and Defendant Markala Moore, entered the business dressed in plain clothing acting as if they were customers. Plaintiff did not realize that the two female customers were actually Detroit Police Officers. Plaintiff was assisting them when he received a telephone call from Sgt. Allen Williams, a defendant in this matter. Defendant Sgt. Williams told Plaintiff in their telephone conversation that an inspection was getting ready to be performed on the business.

At the same time Plaintiff was on the phone with Sgt. Williams, he looked out the front window and could see several male officers, Damario Elliott-Glenn and Christian Earl, approaching the door.

1

Plaintiff made sure that the doors of the business were locked; however, Defendant Markala Moore, already inside the location, unlocked the door for the other officers. (See Exhibit 3, Dep. of Moore, Page 8, Paragraph 25 to Page 9, Paragraph 4).

Plaintiff demanded that the officers leave the premises as it was private property, but the officers refused.

Officers were upset that Plaintiff was still refusing to allow an inspection. Defendant Deandre Williams and Defendant Damario Elliott-Glenn then beat Plaintiff so badly he thought he was going to lose his life. None of the officers present attempted to stop the brutal assault.

While in the location, officers removed all of Plaintiff's video cameras and footage, and as of today's date, have not returned them to Plaintiff. This incident occurred at approximately 3 PM.

To attempt to cover this illegal search and seizure, officers obtained a search warrant approximately five and a half hours later (See ECF 29-1). Defendant Moore stated she believes she drafted the warrant but was not definitive.

Plaintiff was charged with possession of a controlled substance, resisting and obstructing an officer, and felony firearm.

All charges were dismissed by the Wayne County Prosecutor's Office because the complaining witnesses, who were Defendants in this case, failed to appear in court.

## II.   LEGAL STANDARDS

We review a grant of summary judgment de novo. *Terry Barr Sales Agency, Inc*. v. *All-Lock Co.,* 96 F.3d, 174,178 (6th Cir. 1996). "Under Rule 56(c), summary judgment is proper `if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317,322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). "In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party." *Nat'l Enters., Inc. v. Smith,* 114 F.3d 561, 563 (6th Cir.1997).

## III.   ARGUMENT

I, Ivan L. Land, certify that this document complies with Local Rule 5.1(a) including double space (except for quoted materials and footnotes); at least one-inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I certify that it is the appropriate length. Local Rule 7.1(d)(3).

Defendant's Motion should be stricken or given reduced weight due to his failure to comply with the Local Rules of this Court. First, the Motion does not comply with Local Rule 5.1(a), which mandates that all text be at least 14-point in proportional fonts. Defendant's filing uses a smaller, non-compliant font size, making it difficult to read and inconsistent with required formatting.

Second, Defendant violated Local Rule 7.1(a) by failing to properly seek concurrence. Rather than providing Plaintiff's counsel with a reasonable opportunity to respond, Defendant made a single telephone call at approximately 11:30 PM—less than thirty minutes before the Motion was filed. This does not constitute a good faith attempt to obtain concurrence and falls well short of the professional courtesy and procedural fairness contemplated by the Rule.

The Motion, therefore, violates both the form and spirit of the Local Rules, and this Court should consider these failures in evaluating the Motion and any relief sought.

**A.     WHETHER OR NOT PLAINTIFF CAN SHOW THAT ANY SUCH RIGHTS GUARANTEED BY THE U.S. CONSTITUTION WERE VIOLATED PURSUANT TO AN UNCONSTITUTIONAL MUNICIPAL POLICY**

Monell liability attaches when the execution of a municipal policy, practice, or custom results in the violation of constitutional rights. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). A policy can be a formal ordinance, a decision of a final policymaker, a widespread practice so permanent as to constitute custom, or a failure to train that reflects deliberate indifference. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989). Here, the record shows that Detroit officers, acting under direction of supervisors, carried out business-license "inspections" by entering private premises without a warrant or opportunity for precompliance review. These were not isolated acts but the very method the Vice Enforcement unit was instructed to use.

The City of Detroit has established patterns, practices, and customs that encourage and tolerate warrantless inspections and aggressive enforcement tactics that violate the Fourth and Fourteenth Amendments. These constitutional violations

6

were not isolated or the result of rogue actors. Rather, they were the predictable result of municipal policies that authorized, endorsed, or failed to train and supervise officers conducting code enforcement under the auspices of BSEED. This includes authorizing the use of deception by plainclothes officers, the use of physical force without necessity, and encouraging non-consensual entry onto private property under color of law.

The conduct in this case exemplifies a municipal failure to train and supervise, as well as a deliberate indifference to constitutional protections. On March 21, 2022, officers Brittany Moss and Markala Moore entered Plaintiff Daquan James's place of business without a warrant and without identifying themselves as police officers. They wore no uniforms, displayed no badges, and entered under the guise of being customers which show they were intending to deceive. As Officer Moss admitted in her deposition, this tactic was deliberate and was not preceded by any communication or notice to the business owner that an inspection or enforcement action was scheduled. (See Exhibit 4, Dep. of Moss, Page 6, Lines 22-25 to Page 7 Lines 1-4). Officer Moore similarly testified that she and her partner posed as customers, intentionally failing to announce their identity as law enforcement. (See Exhibit 3, Dep. of Moore, Page 6, Lines 14-25).

These actions directly conflict with established Fourth Amendment jurisprudence, which prohibits government agents from using deception as a pretext

to enter constitutionally protected areas. The City's policy, in effect, permitted code enforcement to be carried out by armed officers acting undercover, thereby violating clearly established law. Worse still, when Plaintiff objected to the officers' presence and requested that they leave his private business, Sergeant Allen Williams instructed them to remain and continue the enforcement action. According to Officer Moss, Sergeant Williams made the final decision to proceed inside the business despite Plaintiff's objections. (See Exhibit 3, Dep. of Moore, Page 6, Lines 14-25).

The force used was wholly disproportionate and unnecessary. After Plaintiff objected to the officers' conduct, Sergeant Williams arrived and ordered the officers to physically restrain and arrest him—despite no warrant, no immediate threat, and no exigency. Officer Moss grabbed Plaintiff and placed him in handcuffs, dragging him out of his own business, even though the matter at issue which was a code enforcement could have been handled with a civil citation or, at most, a municipal ticket. (See Exhibit 4, Dep. of Moss, Page 23, Line 22-25 to Page 24, Line 1-5).

The City's policies provided no meaningful guidance or limitation on the conduct of officers executing inspections or enforcement inside private businesses. Officer Moss and Moore both admitted that they received no specific training on the constitutional boundaries of searches and seizures in the context of code enforcement operations. (See Exhibit 3, Dep. Of Moore, Page 28, Lines 4-9 and Exhibit 4, Dep. of Moss, Page 33, Lines 7-10 to Page 24, Line 1-5). Moss further

admitted that she was not aware of any policy requiring a warrant or consent before entering a commercial establishment during these types of inspections. (See Exhibit 4, Dep. of Moss, Page 37, Lines 24-25 to Page 38, Lines 1-5).

It is worth noting that this goes directly against *See v. City of Seattle*, 387 U.S. 541 (1967) which states, "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See* at 543–44.

These admissions demonstrate that the violations were not only foreseeable but inevitable under the City's approach. The City's practices also normalized the unlocking of private spaces during code enforcement without a warrant or exigent circumstances. Sergeant Williams admitted that he told the officers to open the door despite not having a warrant. (See Exhibit 5, Dep. of Williams, Page 7, Lines 12-18). This illustrates a systemic failure by the City to train its officers on the limits of administrative search authority and the necessity of judicial oversight. The pattern of warrantless entry and use of force as a default enforcement mechanism is an unconstitutional practice carried out under color of local policy.

Taken together, these facts support municipal liability under *Monell*. The unconstitutional actions were taken by final policymakers or with their direction and approval. The City did not merely fail to prevent a constitutional violation—it created the conditions that made such a violation certain. Accordingly, Defendant

9

City of Detroit is not entitled to summary judgment and must be held to answer for its role in the deprivation of Plaintiff's constitutional rights.

**B.    WHETHER THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED GOOD FAITH IMMUNITY FROM PLAINTIFF'S FEDERAL CLAIMS UNDER 42 § U.S.C. 1983**

The Supreme Court in *Saucier v. Katz*, 533 U.S. 194 (2001), explained the framework for qualified immunity in excessive force cases. The Court directed that courts must ask first whether the plaintiff has shown facts that make out a constitutional violation, and second whether the right at issue was clearly established at the time of the conduct. At summary judgment the court does not weigh credibility, does not choose between competing narratives, and draws reasonable inferences for the nonmovant. There is a narrow exception when objective video "blatantly contradicts" the plaintiff's account, in which case the court may rely on what the video shows. *Scott v. Harris*, 550 U.S. 372, 380 (2007). Courts may address the two questions in either order after *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), though many still follow the *Saucier* sequence because it clarifies both the alleged violation and the state of the law. If the plaintiff's facts show a constitutional violation and the right was clearly established when the conduct occurred, qualified immunity is denied.

That backdrop stands in sharp contrast to what happened to Mr. James. Here, Detroit officers entered his private business without a warrant, under the pretext of

10

a license inspection, and escalated the encounter by moving him into a bathroom without cameras. There they struck him in the face with a closed fist, kneed him in the body, and continued blows even though he was unarmed, in a confined tiled space, and suffering from a prior abdominal wound. They did this without first securing a firearm known to be present. The sequence does not reflect a good-faith effort to neutralize a threat. It reflects unnecessary and punitive blows that serve no legitimate purpose during an unlawful search and seizure of Plaintiff's property.

**EXCESSIVE FORCE**

The Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), set the framework for excessive-force claims under the Fourth Amendment. The Court held that "all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham* at 395. The controlling test is objective reasonableness, judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham* at 396.

To guide that inquiry, the Court outlined three core considerations: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham* at 396. These factors are not

11

exclusive, but they frame the balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham* at 396.

Applying that framework to the facts in *Graham* demonstrates why Plaintiff's case falls well within the core of what *Graham* prohibits. In *Graham*, officers used force against a diabetic man who had briefly entered and exited a convenience store in a manner they found suspicious. Even though the officers suspected shoplifting, the Court emphasized that the underlying crime was minor, the threat minimal, and the resistance negligible. Because the governmental interest was slight, even modest force could cross into excess.

The parallels here are stronger. First, the "crime at issue" factor weighs decisively in Plaintiff's favor. Officers had no lawful predicate at all. They entered a private business for a "license inspection" without consent, without a warrant, and without precompliance review. Where *Graham* involved suspicion of theft, this case involves no valid suspicion of crime. The absence of a predicate offense undercuts any governmental interest from the outset.

Second, the "immediate threat" factor collapses under scrutiny. Officers point to Plaintiff's holstered firearm. But the record shows that the firearm was not secured until after multiple head and body strikes were delivered. A reasonable officer would secure the weapon first before escalating to closed-fist strikes in a cramped, tiled

12

bathroom. As in *Graham*, where the supposed threat was a man stumbling from insulin shock, the perceived danger here was speculative at best and not addressed with proportional or logical tactics. Furthermore, the firearm was lawfully possessed by Plaintiff, a CPL holder on his property and remained holstered, which weighs against any immediate threat (See Exhibit 6, Plaintiff's CPL).

Third, the "resistance or flight" factor also favors Plaintiff. There was no attempt to flee, and no evidence that Plaintiff mounted an attack. He was in his own business when officers escalated the encounter by moving it off camera into a bathroom. Whatever movements he made were defensive in the face of unconstitutional intrusion and physical strikes. As in *Graham*, the absence of meaningful resistance makes the officers' escalation unreasonable.

Indeed, in each respect this case presents a stronger claim of unreasonableness than *Graham* itself. In *Graham*, there was at least some suspicion of a minor offense; here, there was none. In *Graham*, the plaintiff's condition was misunderstood as resistance; here, Plaintiff did not resist at all and still faced blows to the head and body in a confined space after an unlawful entry. (See Exhibit 7, Plaintiff's Affidavit). In *Graham*, the Court remanded for jury consideration; here, a jury could likewise conclude that the sequence of events—an unconstitutional inspection, movement into a camera-free bathroom, and delivery of multiple strikes without securing the firearm—was objectively unreasonable.

13

The comparison underscores why the force here was excessive under clearly established law. If *Graham* prohibits force in the context of a suspected shoplifting where resistance was negligible, it necessarily prohibits more severe force during an unlawful inspection where no crime existed, the supposed threat was not neutralized before the assault, and the officers themselves created the conditions for escalation. Under *Graham's* balancing test, the "governmental interest" prong weakens to nothing, and the intrusion on Plaintiff's Fourth Amendment rights dominates the analysis.

Several additional facts confirm the force was excessive. First, the claim that Plaintiff "clamped down" on his firearm is inconsistent with a safety-first response: no officer testified the gun was secured before the blows, and witness Tony Townes swears it was taken only after the assault. (ECF 11-1, Ex. 3 Aff. of Tony Townes). In addition, Townes's contemporaneous verbal exchange with officers confirms both the severity of the assault and the lack of lawful justification. As the beating unfolded, Townes protested, "What is you doing?… Dawg what is he doing bro why is he doing that? That shit bold as hell. Y'all fucked up y'all don't got no reason in here bro." An officer responded, "SHUT THE FUCK UP NIGGA," followed by, "YOU A BITCH ASS NIGGA." Townes replied, "YOU A BITCH ASS NIGGA. We ain't did shit up in here. Y'all ain't got no business up in here."

14

Second, officers steered Plaintiff into the only room without cameras, the bathroom, despite knowing the store was monitored, supporting an inference that the location choice was deliberate and inconsistent with safety.

Third, the force used, closed-fist punches and a knee strike to the head and body in a slick, tiled space against a shop owner with a known abdominal bullet wound, matches what the Sixth Circuit has condemned as excessive when no immediate threat exists. (See ECF 11-1, Ex. 1, Defendant Demario Elliot-Glenn's Report). See also, *Baker v. City of Hamilton*, 471 F.3d 601, 607–08 (6th Cir. 2006); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901–03 (6th Cir. 2004); *Martin v. City of Broadview Heights*, 712 F.3d 951, 962–63 (6th Cir. 2013). Finally, this was consistent with Defendant Deandre Williams' pattern; in a separate liquor-license and vice inspection, the Wayne County Prosecutor charged and arraigned him for assault and battery. (See Exhibit 8, FOX 2 Detroit, "Detroit police officer charged with assaulting bouncer downtown" (Oct. 26, 2023)). Taken together, the sequence, setting, nature of the blows, and pattern evidence show clearly excessive force not entitled to qualified immunity.

**ILLEGAL SEARCH & SEIZURE.**

The Supreme Court in *City of Los Angeles v. Patel*, 576 U.S. 409 (2015), explains how the Fourth Amendment applies to warrantless inspections of businesses. Building on *See*, and *Marshall v. Barlow's, Inc.*, 436 U.S. 307 (1978),

15

the Court reaffirmed two basics: government searches of businesses are generally unreasonable without consent or a warrant, and any inspection system must let the owner ask a neutral decisionmaker to review the demand before penalties apply. *Patel*, 576 U.S. at 420–26. There is a narrow exception for "closely regulated" industries, governed by *New York v. Burger*, 482 U.S. 691, 702–12 (1987).

Three practical rules come out of these cases. First, routine inspections need consent or a warrant that follows neutral, regular criteria, not ad-hoc officer choice. *See*, at 543–46; *Barlow's* at 316–20. Second, when a statute or ordinance authorizes inspections, the scheme must give a real chance for precompliance review by a neutral decisionmaker before any penalty for saying no. *Patel* at 420–26. Third, only if the business is in a closely regulated field may the government inspect without a warrant, and even then, only if Burger's three requirements are met: a substantial government interest, inspections that are necessary to further the scheme, and clear rules that limit officer discretion and act as a substitute for a warrant. *Burger*, 482 U.S. at 702–12; see also *Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984).

*Patel* shows how this works. Los Angeles required hotels to hand over guest records on demand and made refusal a crime. Because the ordinance gave no way to seek precompliance review, the Court held it unconstitutional on its face. *Patel* at 420–26. The city's interests did not erase the warrant requirement, and hotels were not treated as a closely regulated industry. *Patel* at 424–26.

This case is more straightforward. Officers entered a private business for a "license inspection" without consent, without a warrant, and without any administrative subpoena or court order. That is the kind of discretionary entry *See* and *Barlow's* forbid. *See* at 543–46; *Barlow's* at 316–20.

There was also no path for precompliance review. Plaintiff had no way to decline and promptly ask a judge to review the demand before facing consequences. Under Patel, an inspection system without precompliance review is unconstitutional, and a one-off officer demand is no better. *Patel* at 420–26.

The shop here is not a closely regulated business. *Patel* declined to treat hotels as closely regulated. *Patel* at 424–26. A retail novelty store is even further from that category. Even if defendants try to reframe this as liquor or vice enforcement, *Burger* still requires a real program with clear limits that replace a warrant. There is no evidence of fixed rules, neutral selection, regular schedules, or notice. *Burger* at 702–12.

It fails *Burger* on necessity and limits as well. Moving the encounter off camera, unlocking private areas, and escalating the encounter without first getting neutral process is not necessary to enforce licensing rules, and it does not supply the regularity and certainty that act as a warrant substitute. *Burger* at 711–12; *Lone Steer* at 415.

17

Patel involved record checks under an ordinance. Here the officers made a physical entry and sweep with no consent, no warrant, and no chance for precompliance review. Patel allows warrantless inspections only inside carefully limited programs and only for closely regulated industries. *Patel* at 420–26; *Burger* at 702–12. None of those conditions exist here.

Under this settled line of cases, the entry and inspection were unlawful. If *Patel* and *See* forbid forcing a hotel to comply without precompliance review, they also forbid officers from entering and searching an ordinary business on the spot without a warrant, consent, neutral process, or a valid regulatory program. The government's interests do not remove the warrant rule. The Fourth Amendment controls the analysis.

**FAILURE TO INTERVENE**

Multiple officers were present in the store and positioned directly outside the bathroom while Mr. James was moved and assaulted. The encounter was not a single split-second strike but a sequence that involved relocating him into a camera-blind space and delivering multiple closed-fist and knee strikes. A jury can conclude that officers had both the opportunity and the means to step in—by refusing to assist in moving him, redirecting the encounter into a camera-covered space, securing the firearm before blows were delivered, or physically intervening once strikes began.

*Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

The Sixth Circuit's cases show why these facts are enough. In *Burgess*, officers who did not strike the plaintiff still faced liability because they were present during the assault and failed to intervene. *Burgess* at 475. In *Turner*, the court held that an officer who watched another use force without stepping in could be held liable under § 1983. *Turner* at 429. Those illustrations confirm that liability attaches not only to the one throwing punches but also to those who stood by with the ability to prevent or mitigate harm.

Here, because the assault took place in a confined space with several officers present and unfolded over a period of time, a reasonable jury could find that at least one officer had a realistic opportunity to intervene but failed to do so. That is sufficient to defeat summary judgment.

**CIVIL CONSPIRACY**

A § 1983 conspiracy requires an agreement to deprive a person of constitutional rights and overt acts taken to carry that agreement into effect. *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). The agreement need not be formal; circumstantial evidence like coordinated timing, use of decoys, and synchronized communication can support a jury finding. *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000); *Revis v. Meldrum*, 489 F.3d 273, 290–91 (6th Cir. 2007).

Here the facts show a coordinated plan after Mr. James refused entry on March 16. On March 21, officers sent in two plainclothes decoys posing as customers, had one unlock the door, and then brought in others to carry out the entry and seizure. The Sergeant's contemporaneous phone call advising James that an inspection was "about to occur" further links the actors to a single plan. These are overt acts in furtherance of a shared objective to conduct a warrantless search and seizure despite a prior refusal. *Hooks* at 943–44.

Calling it an undercover operation does not shield the plan. The Supreme Court has made clear that administrative inspections of private premises require either a warrant or an opportunity for neutral precompliance review. *Camara v. Mun. Ct.*, 387 U.S. 523, 534–39 (1967); *See* at 544–46 (1967); *Patel* at 420-21. The "closely regulated industry" exception under *Burger* at 702–12 is narrow and not met here. By using ruse entry after refusal, officers showed that their aim was to evade constitutional requirements, not follow them.

Taken together, the March 21 conduct permits a jury to find a tacit agreement, multiple overt acts, and resulting injury from an unlawful search and seizure. That is enough to sustain the § 1983 conspiracy claim under Sixth Circuit precedent. *Hooks* at 943–44; *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003).

**INTENTIONAL INFLICITON OF EMOTIONAL DISTRESS**

To establish a prima facie claim of intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Walsh v. Taylor*, 263 Mich. App. 618, 634, 689 N.W.2d 506 (2004). Extreme and outrageous conduct is conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." Id. (quoting *Graham v. Ford*, 237 Mich. App. 670, 674, 604 N.W.2d 713 (1999)). The question is whether the average member of the community, hearing the facts, would react by saying "Outrageous!" *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 603, 374 N.W.2d 905 (1985). Whether conduct reaches this level is first a question for the court, but where reasonable minds may differ, the issue is for the jury. *Linebaugh v. Sheraton Michigan Corp.*, 198 Mich. App. 335, 342–43, 497 N.W.2d 585 (1993).

The facts here meet that standard. Officers moved Mr. James into a bathroom that they knew had no camera coverage and assaulted him with closed-fist punches and knee strikes during what was supposed to be an administrative inspection. The inspection itself was the kind of encounter that typically ends with nothing more than a citation. Instead, they isolated him in a confined, tile-floored room, struck him in the head and body, and did so knowing he had a bullet lodged in his abdomen. The choice to conceal the assault from cameras, combined with the vulnerability of

21

the victim, reflects deliberate and reckless disregard for the likelihood of causing severe emotional trauma.

The causal link is plain. Mr. James has described a fear of dying again, physical pain, and ongoing psychological distress from being beaten in secret by government officials inside his own business. These are not fleeting annoyances, but the kind of lasting emotional injuries Michigan courts recognize as sufficient for an IIED claim. *Walsh* at 634; *Lewis v. LeGrow*, 258 Mich. App. 175, 196–97, 670 N.W.2d 675 (2003). On these facts, a jury could conclude that the officers' conduct went beyond all bounds of decency, was undertaken intentionally or recklessly, and caused severe emotional distress.

### IV. CONCLUSION

For the above state reasons, Plaintiff asks this Honorable Court to dismiss Defendants Motion for Summary Judgment.

Dated: September 15, 2025                          Respectfully Submitted,


/s/Ivan L. Land
Ivan L. Land (P65879)
Law Offices of Ivan L. Land, P.C.
25900 Greenfield Rd., Suite 210
Oak Park, MI  48237-1267
248.968.4545 / (f) 248.968.4540
ill4law@aol.com
**Attorney for PLAINTIFF**

22

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing Brief in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment with the Court Clerk via CM/ECF on September 15, 2025, to serve all parties.


Dated: September 15, 2025                    Respectfully Submitted,


                                             /s/Ivan L. Land
                                             Ivan L. Land (P65879)

23